1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STACEY MOODY,

    Plaintiff,

 v.

COUNTY OF SAN MATEO, LAURENCE
GAINES, RON SALAZAR,

    Defendants

_____/

No. C-08-1864 MMC

**ORDER GRANTING IN PART COUNTY
DEFENDANTS' MOTION FOR
SUMMARY ADJUDICATION OF CLAIMS
AND ISSUES; DISMISSING WITHOUT
PREJUDICE STATE LAW CLAIMS**

   Before the Court is defendants County of San Mateo ("the County") and Ron Salazar
("Salazar") (collectively, "County Defendants") "Motion for Summary Adjudication of Claims
and Issues," filed October 2, 2009.  Plaintiff Stacey Moody ("Moody") has filed opposition,
to which County Defendants have replied.  Further, with leave of court, Moody has filed a
supplemental opposition, and County Defendants have filed a response thereto.  Having
read and considered the papers filed in support of and in opposition to the motion, including
the parties' respective supplemental filings, the Court rules as follows.[1]

             **BACKGROUND**

   Moody, a deputy sheriff employed by the County, alleges she has been subjected to

_____

  [1]By order filed November 4, 2009, the Court deemed the matter submitted as of
November 16, 2009, which date, by order filed November 18, 2009, was extended to
November 19, 2009.

"sex/gender discrimination, sex harassment, retaliation, and other wrongful acts committed by defendants."  (See Compl. ¶¶ 2, 10.)  Specifically, Moody alleges, against both the County and Salazar, claims for "sex harassment" in violation of Title VII and "intentional and negligent infliction of emotional distress" in violation of state law; Moody further alleges, against the County only, claims for "discrimination," "hostile work environment," and "retaliation," each in violation of Title VII, as well as a claim for "negligent hiring, training, and supervision" in violation of state law.[2]

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact.  Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477 U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Liberty Lobby, 477 U.S. at 249-50 (citations omitted).  "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

---

[2]Additionally, Moody alleges a state law claim for "battery" and a claim for "sex harassment" in violation of Title VII against a third defendant, Laurence Gaines ("Gaines"). By order filed October 23, 2009, the Court granted Gaines's motion for summary judgment on the Title VII claim alleged against him.

2

1   most favorable to the party opposing the motion."  See Matsushita, 475 U.S. at 587

2   (internal quotation and citation omitted).

3                                **DISCUSSION**

4   **A.  Federal Claims**

5          **1.  Salazar**

6          Moody asserts one federal claim against Salazar, specifically, the Second Cause of

7   Action, by which Moody alleges Salazar violated Title VII by engaging in "sex harassment."

8   (See Compl. ¶ 29.)

9          County Defendants argue that a plaintiff may not proceed with a sexual harassment

10   claim under Title VII against an individual who is not an employer.  The Court agrees.  See

11   Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1053, 1058 (9th Cir. 2007) (holding district

12   court properly granted summary judgment in favor of supervisor on sexual harassment

13   claim brought under Title VII; noting, "We have long held that Title VII does not provide a

14   separate cause of action against supervisors or co-workers").

15          Accordingly, County Defendants have shown Salazar is entitled to summary

16   judgment on the Second Cause of Action.

17          **2.  The County**

18          Moody alleges the following federal claims against the County, each of which arises

19   under Title VII:  (1) "sex harassment" (Second Cause of Action); (2) "discrimination" (Third

20   Cause of Action); (3) "hostile work environment" (Fourth Cause of Action); and

21   (4) "Retaliation" (Sixth Cause of Action)

22                  **a.  Sex Harassment/Hostile Work Environment**

23          Because Moody's claims for "sex harassment" and for "hostile work environment"

24   are both based on the theory that County employees sexually harassed Moody, the Court

25   will address these two claims together, as do the parties.

26                      **(1)  Scope of Claim**

27          In her Complaint, Moody identifies the following acts, which, she asserts, constitute

28   harassment on account of her gender:  (1) Salazar, during 2006 and 2007, made "habitual

                                          3

1  sexual comments of a highly suggestive [nature] that would make [Moody] feel

2  uncomfortable" (see Compl. ¶¶ 17, 30); (2) Gaines, on July 6, 2007, "without provocation

3  assaulted and battered Moody by violently pulling her into his 'extend-a-microphone'

4  thereby striking her right cheek and eye socket, placing her in [a] headlock, lifting her off

5  the ground, and throwing her on the ground" (see Compl. ¶¶ 11, 30, 42); and

6  (3) Lieutenant Gil Rodriguez ("Lt. Rodriguez"), who was approached by Moody "soon after"

7  the alleged battery by Gaines on July 6, 2007 to discuss the matter with him, responded by

8  stating he had "important business to take care of in the jail," "this is like a hard day at the

9  nail salon," and that he had "tissues in [his] office if [she] need[ed] it" (see Compl. ¶¶ 12,

10  21, 28, 38).

11       During the course of discovery, County Defendants propounded a set of

12  interrogatories, in which they requested the following:  "For each person whom you contend

13  harassed you, describe the harassment."  (See Wong Decl., filed October 23, 2009, Ex. V

14  at 7.)  In response, Moody, as well as identifying the above-described alleged statements

15  by Salazar, battery by Gaines, and response Rodriguez gave to Moody's report of the

16  battery, identified the following conduct that, according to Moody, constitutes a further basis

17  of her harassment claim:  Sergeant Gary Brown ("Sgt. Brown"), on dates unspecified by

18  Moody in the response, "would continuously make inappropriate gender related comments

19  to [Moody] and would touch her or get so close to her as to inappropriately invade her

20  personal space in such a way that it altered the conditions of [Moody's] employment."  (See

21  id. Ex. V at 8.)

22       In her opposition to County Defendants' motion for summary judgment, which

23  opposition was filed well after the close of discovery and three months before the

24  scheduled trial date, Moody for the first time asserts her harassment claim is also based on

25  the following alleged conduct ("Additional Alleged Conduct"):  (1) Bob Wilder ("Wilder"), in

26  2003, "stalked" Moody by "call[ing] Moody's home 25 times a day while she was off duty"

27  (see Pl.'s Opp., filed October 22, 2009, at 1:24-25); (2) Lt. Rodriquez, "on at least 10

28  separate occasions," "touch[ed], hug[ged], and [kiss]ed" Moody (see id. at 3:4-15); and

4

1   (3) Lt. Rodriguez "allow[ed] subordinate officers to openly talk about the fact that Moody

2   would make a good sex partner because she was flexible" and "about Moody's assumed

3   abilities at giving oral sex," even though Lt. Rodriguez found the talk "inappropriate" (see id.

4   at 3:18-23).

5          County Defendants argue the scope of Moody's sexual harassment claim is properly

6   limited to the conduct identified in her Complaint and in her answer to the above-described

7   interrogatory.  The Court, for the reasons discussed below, agrees.

8          Moody does not contend that either by her Complaint or her response to the above-

9   quoted interrogatory, or by any other discovery response she may have proffered to County

10  Defendants, she provided the County with notice that she was basing her sexual

11  harassment claim on the Additional Alleged Conduct identified in her opposition to the

12  instant motion.  Rather, Moody argues, the entirety of the sexual harassment claim she

13  now seeks to bring is properly before the Court because the administrative complaint she

14  filed with California Department of Fair Employment and Housing ("DFEH") on December

15  27, 2007, was sufficient to put the County on "notice of her claims of sexual harassment."

16  (See Pl.'s Surreply, filed November 16, 2009, at 10:8-9.)  In support of this argument,

17  Moody relies on the principle that "incidents of discrimination not included in an EEOC

18  charge" may be considered by a district court if such incidents are "like or reasonably

19  related to the allegations contained in the EEOC charge."  See Sosa v. Hiraoka, 920 F.2d

20  1451, 1456 (9th Cir. 1990).

21         Such principle, however, is of no assistance to Moody in this instance.  Assuming,

22  arguendo, the Additional Alleged Conduct is "like or reasonably related to" the allegations in

23  Moody's administrative charge, the sole effect of such finding would be to provide the Court

24  with subject matter jurisdiction over those "like" claims; the authority on which Moody relies

25  does not address the question presented herein, specifically, the timing of a plaintiff's

26  assertion of a claim subsequent to the initiation of an action in federal court.  See, e.g., id.

27  at 1458 (holding district court had jurisdiction over plaintiff's Title VII claims where "all of the

28  acts [the plaintiff] alleged in his First Amended Complaint [were] on their face like or

5

reasonably related to the allegations in his EEOC charge") (emphasis added).  Here, as

discussed above, Moody did not allege in her Complaint a Title VII claim based on the

Additional Alleged Conduct, nor did she disclose the Additional Alleged Conduct in her

response to the County's interrogatories when specifically requested to identify all incidents

on which her harassment claim was based.

Finally, Moody has not, in her opposition or otherwise, either sought leave to amend

her Complaint or an extension of the discovery deadline for the purpose of supplementing

her responses to the County's interrogatories in order to expand the scope of her

harassment claim.  Nor does the record before the Court suggest allowing such an

amendment or extension of the discovery deadline would be proper at this late stage of the

proceedings.  In particular, both the June 5, 2009 deadline to complete fact discovery and

the August 28, 2009 deadline to complete expert discovery have long passed.

Consequently, expanding the scope of Moody's claims at this late date would necessitate

the reopening of discovery and vacating of the existing pretrial and trial dates, thus

delaying the proceedings and disrupting the schedule on which all parties have been

relying for more than a year.  (See Pretrial Preparation Order, filed December 14, 2009);

see, e.g., Solomon v. North American Life and Casualty Ins. Co., 151 F.3d 1132, 1139 (9th

Cir. 1998) (holding where plaintiff filed motion to amend "on the eve of the discovery

deadline," motion to amend properly denied; "[a]llowing the motion would have required

reopening discovery, thus delaying the proceedings"); see also Wong v. Regents, 410 F.3d

1052, 1062 (9th Cir. 2005) (finding district court did not err by not allowing plaintiff to make

late disclosure of witness where disclosure would have necessitated vacating "the rest of

the schedule"; holding "[d]isruption to the schedule of the court and other parties . . . is not

harmless").

Although there may exist circumstances where, irrespective of any delay and

disruption, allowing a party to expand the scope of her claims on the eve of trial may be

appropriate, such circumstances are absent here.  Moody does not contend, for example,

she recently became aware of the Additional Alleged Conduct, or even that she was

6

1  unaware of the Additional Alleged Conduct when she filed her Complaint in April 2008.

2  See, e.g., AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 953-54 (9th Cir.

3  2006) (finding leave to amend properly denied where plaintiff, whether by "gamesmanship

4  or the result of an oversight by counsel," sought leave to amend fifteen months after

5  learning of basis for new claim; observing even "eight month delay between the time of

6  obtaining a relevant fact and seeking a leave to amend is unreasonable"); Kaplan v. Rose,

7  49 F.3d 1363, 1370 (9th Cir. 1995) (holding, where plaintiff raised new claims during

8  pendency of motion for summary judgment, which district court treated as implied motion to

9  amend, such motion properly denied where trial was "only two months away," "discovery

10 was completed," and plaintiff was aware of newly-raised issues when he filed complaint).

11      Accordingly, the scope of the harassment claim is properly limited to the incidents

12 alleged in Moody's Complaint and in her response to the County's interrogatory.

13                          **(2)  Merits of Claim**

14      To establish a harassment claim premised on gender, a plaintiff must establish that

15 (1) she was subjected to verbal or physical conduct pertaining to her gender, (2) the

16 conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter

17 the conditions of the plaintiff's employment and create an abusive work environment.  See

18 Gregory v. Widnall, 153 F. 3d 1071, 1074 (9th Cir. 1998).  The determination as to whether

19 an environment is sufficiently hostile or abusive is made by "looking at all the

20 circumstances, including the frequency of the discriminatory conduct; its severity; whether it

21 is physically threatening or humiliating, or a mere offensive utterance; and whether it

22 unreasonably interferes with an employee's work performance."  See Faragher v. City of

23 Boca Raton, 524 U.S. 775, 788 (1998).  "The more outrageous the conduct, the less

24 frequent must it occur to make a workplace hostile."  Gregory, 153 F.3d at 1074.  On the

25 other hand, "the mere utterance of an [ ] epithet which engenders offensive feelings in an

26 employee would not violate Title VII, as it would not affect the conditions of employment to

27 a sufficiently significant degree."  See Etter v. Veriflo Corp., 67 Cal. App. 4th 457, 463

28 (1999) (internal quotations and citation omitted).

"A plaintiff may state a case for harassment against the employer under one of two theories:  vicarious liability or negligence." Swinton v. Potomac Corp., 270 F.3d 794, 803 (9th Cir. 2001).  "Which route leads to employer liability depends on the identity of the actual harasser, specifically whether he is a supervisor of the employee, or merely a co-worker." Id. "If the harasser is a supervisor, the employer may be held vicariously liable." Id. "If, however, the harasser is merely a co-worker, the plaintiff must prove that the employer was negligent, i.e. that the employer knew or should have known of the harassment but did not take adequate steps to address it." Id.

**(a) Co-Workers**

In the instant case, it is undisputed that two of the alleged harassers, Salazar and Gaines, are co-workers.

**(i) Salazar**

At her deposition, Moody testified that, beginning in 2004 and continuing to July 6, 2007, Salazar would say, whenever he saw her, "You're hot. You're hot.  You know how hot you look today, girl?  Damn, you're hot." (See Levy Decl., filed October 2, 2009, Ex. A at 58-60, 237-39.)  According to Moody, such comments were "all he ever would say" to her.  (See id. Ex. A at 60.)  Moody asserts that after she complained about Salazar's conduct, the County "disciplined" him.  (See Pl.'s Opp. at 2:17-19.)[3]

County Defendants argue there is insufficient evidence to support a finding that the County had notice of Salazar's conduct.  County Defendants rely on Moody's testimony that she did not complain to any supervisor about Salazar's conduct during the time the conduct was assertedly occurring (see id. Ex. A. at 58), as well as on evidence that Moody first brought Salazar's conduct to the County's attention in October 2007, which date postdated by several months the last allegedly harassing comment by Salazar (see id. Ex. A at 246-47).

Moody argues a triable issue of fact exists as to notice to the County, relying on

---

[3]The record does not reflect the type of discipline imposed.

8

evidence that Tina Lewis, a payroll clerk, was present on one occasion when Salazar made a "you're hot" comment (see McCoy Decl., filed October 16, 2009, Ex. A at 60), and that Moody once heard Salazar make a similar comment to Stacy Bonilla, a bailiff (see id. Ex. A at 59).[4]  Moody, however, does not offer any evidence, or even assert that either of those two individuals reported Salazar to a supervisor, or that any person within County management was otherwise advised of any allegedly inappropriate comment Salazar made to Moody or to any other employee of the County.  See Swinton, 270 F.3d at 803 (holding, in order to establish negligence by employer in harassment case, plaintiff required to prove, inter alia, "management knew or should have known of the harassment").

Additionally, although Moody points to the County's decision to "discipline" Salazar, Moody does not argue, let alone offer any evidence to support a finding, that the discipline imposed was in any respect inadequate.  Further, Moody fails to offer any evidence that the County's determination to discipline Salazar was based on any conduct other than the conduct Moody brought to the County's attention in October 2007.  In particular, Moody offers no evidence to support a finding that the County's disciplining of Salazar subsequent to Moody's having reported his above-described conduct to her supervisors was based, either in whole or in part, on any other conduct of which the County had notice either before or during the time in which Salazar is asserted to have made harassing statements to Moody.

Accordingly, Moody has failed to establish sufficient evidence to support a finding that the County, prior to July 6, 2007, "knew or should have known of [Salazar's] harassment but did not take adequate steps to address it."  See Swinton, 270 F.3d at 803.

**(ii)  Gaines**

At her deposition, Moody testified that, on July 6, 2007, while Moody was standing with her back away from Gaines awaiting an elevator, Gaines "slammed [Moody] into the wall," and after Moody reacted by hitting him above the neck, Gaines "grabbed" her wrist

---

[4]There is no contention that either Tina Lewis or Stacy Bonilla is a supervisor.

1    and pulled her toward him, then "came around with an arm and locked it behind [her] neck

2    and stood up and picked [her] off the ground," and, finally, "dropped [her] to the ground."

3    (See Levy Decl. Ex. A at 175-76.)  The County subsequently terminated Gaines from

4    employment after it determined that Gaines had "assaulted a fellow deputy," i.e., Moody.

5    (See McCoy Decl., filed October 16, 2009, Ex. C at 28; see also Levy Decl. Ex. O.)

6         County Defendants argue there is insufficient evidence to support a finding that the

7    County was on notice as to Gaines prior to the above-described incident.  In support

8    thereof, County Defendants offer evidence that the County was not aware of any similar

9    incidents involving Gaines.  Specifically, County Defendants offer the testimony of Lt.

10   Victoria O'Brien ("Lt. O'Brien"), who investigated the incident reported by Moody, and who

11   testified that when she was first advised about the incident, she thought it was "unique"

12   because she "hadn't [previously] dealt with anything when two deputies are fighting

13   physically."  (See id. Ex. H at 22.)  Additionally, County Defendants rely on Moody's

14   testimony that Moody was "not aware" of any prior incident in which Gaines had been

15   "accused of engaging in inappropriate horseplay at work on duty," was "accused of or

16   alleged to have physically assaulted a female deputy," or had "engaged in any

17   inappropriate physical conduct toward a female deputy" (see id. Ex. A at 196), as well as

18   Moody's testimony that she was unaware of any female deputy ever having complained to

19   the County about Gaines.  (See id.)

20        Moody contends a triable issue exists with respect to notice, relying on Gaines's

21   deposition testimony that, during the course of his employment by the County, he had been

22   investigated for "misconduct" on four occasions.  (See McCoy Decl., filed October 16,

23   2009, Ex. B at 84.)  Moody fails, however, to offer any evidence as to the nature of the

24   conduct for which Gaines was investigated, with the exception of one complaint made by a

25   male resident of East Palo Alto, who stated Gaines had "threatened to shoot him and

26   intimidated him" (see id. Ex. B. at 90), which allegations Gaines denied at his deposition

27   //

28   //

1  (see id.).[5]  Moody offers no evidence with respect to the results of that investigation or any

2  other, and County Defendants have offered evidence, undisputed by Moody, that, aside

3  from the incident involving Moody, the only incident for which Gaines was disciplined

4  involved Gaines's having poached abalone.  (See Levy Decl. Ex. N at 7:20-23.)  In sum,

5  Moody has failed to offer any evidence to support a finding that any of the four

6  investigations involved conduct in any manner similar to the incident that occurred on July

7  6, 2007, or that the County knew or should have known from some other source that

8  Gaines would assault Moody without provocation.

9       Additionally, although Moody points out that Gaines's employment was terminated,

10  Moody fails to offer any evidence to support a finding that the termination was because of

11  any incident other than the incident involving Moody.  Moody offers no evidence, for

12  example, to support a finding that, in the absence of some prior misconduct, the County

13  would have imposed a lesser sanction.

14       Accordingly, Moody has failed to offer sufficient evidence to support a finding that

15  the County, prior to the July 6, 2007 incident, "knew or should have known of [Gaines's]

16  harassment but did not take adequate steps to address it."  See Swinton, 270 F.3d at 803.

17                              **(b) Supervisors**

18       It is undisputed that two of the alleged harassers, specifically, Sgt. Brown and Lt.

19  Rodriguez, were supervisors.  As discussed above, the County may be held vicariously

20  liable for the harassing conduct of its supervisors.

21       With respect to Sgt. Brown, Moody testified at her deposition that, in 2003 when she

22  was on "light duty," a "couple of people" asked her why she was on light duty, and she

23  responded she had "sciatic neuropathy" from "wearing the gun belt."  (See Levy Decl. Ex. A

24  at 63, 65.)  According to Moody, Sgt. Brown then stated, "What, is she kidding?  She's

25  pregnant with Wilder's [a male deputy] baby.  Why do you think she's on light duty?"  (See

26  id. Ex. A at 65.)

27  _____

28       [5]At his deposition, Gaines could not recall precisely when such complaint was made, but believed it was made in "approximately 2001."  (See id.)

With respect to Lt. Rodriguez, Moody testified at her deposition that, shortly after the above-described July 6, 2007 encounter with Gaines, she saw Lt. Rodriguez, and the following ensued:

> I told him I needed to talk to him. And he said that he had to take care of some business in the jail. And I said, "Well, I think I just got my butt kicked by a deputy sheriff, so I think I need to talk to you." And right when I said that, [one of two male deputies also present] goes, "It wasn't either of us, sir. We didn't do anything."
> ...
> He [Lt. Rodriguez] told me that he needed to go over to the jail and take care of some stuff, and that he realizes it's a hard day at the nail salon for a pretty girl like me, and that if I need some tissue, there's some on the desk. I should go get it and clean myself up and go back to work.

(See id. Ex. A at 70-71.)

The Court finds these incidents, which occurred four years apart, whether considered separately or together, are insufficient as a matter of law to support a finding of sexual harassment, i.e., conduct sufficiently "extreme" to "amount to a change in the terms and conditions of employment." See Faragher, 524 U.S. at 788 (holding Title VII not violated by "mere offensive utterance," "offhand comments," or "sporadic use of abusive language, gender-related jokes, and occasional teasing").

### (3) Conclusion: Sex Harassment/Hostile Work Environment Claims

Accordingly, County Defendants have shown the County is entitled to summary judgment on the Second and Fourth Causes of Action.

### b. Discrimination

In her Complaint, Moody alleges, in the Third Cause of Action, that she was subjected to discrimination on account of gender when the County "passed her over for promotion to the [N]arcotics [T]ask [F]orce ("NTF"), though she was qualified for the position, and instead awarded the promotion to a male with less experience." (See Compl. ¶ 37.)

//

//

1

**(1)  2005 and 2006 Applications for NTF**

2        In her declaration submitted in opposition to the instant motion, Moody states that in

3   February 2005, in November 2005, and in September 2006, she applied for a position with

4   the NTF, and that, in each instance, she was "passed over for a male."  (See Moody Decl.,

5   filed October 16, 2009, ¶¶ 3-5.)  County Defendants argue that any claim based on a failure

6   to promote in 2005 and 2006 is barred by the statute of limitations.

7        A Title VII claim is "time barred" if the plaintiff does not file with the EEOC an

8   administrative charge within 300 days "'after the allegedly unlawful practice occurred.'"  See

9   National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002) (quoting 42 U.S.C.

10  § 2000e-5(e)(1)).  "A discrete retaliatory or discriminatory act 'occurred' on the day that it

11  happened," and, consequently, the plaintiff must file an administrative charge within 300

12  days of the date of the act or "lose the ability to recover for it."  See id.  A "failure to

13  promote" is such a "discrete" act.  See id. at 114.

14       Here, it is undisputed that Moody filed her administrative charge on December 27,

15  2007.  The administrative charge is limited on its face to conduct occurring in and after July

16  2007 and does not allege any failure to promote.  (See Wong Decl. Ex. T.)  Additionally, in

17  a "questionnaire" completed by Moody, and apparently submitted by her concurrently with

18  or shortly after the filing of her administrative charge, Moody neither referred to or

19  discussed, in any manner, any failure(s) by the County to promote her, either to the NTF or

20  otherwise.  Moreover, even assuming, arguendo, the administrative charge can be

21  construed as alleging the County violated Title VII by failing to promote Moody,[6] any civil

22  action based on the County's failure to promote Moody in 2005 and 2006 is time-barred,

23  because December 27, 2007 is more than 300 days after the dates on which the County

24  //

25  //

26

27          [6]Although County Defendants note that the administrative claim and accompanying
28  questionnaire do not assert the County at any time failed to promote Moody, County
    Defendants do not argue Moody has failed to exhaust her failure-to-promote claims.

1   assertedly failed to promote Moody in those earlier years.[7]

2                        **(2)  2008 Application for NTF**

3          In her declaration, Moody states she applied for two positions with the NTF in

4   October 2008, and that she was "passed over for male employees," specifically, Joe Cang

5   ("Cang") and Christopher Swinney ("Swinney").  (See Moody Decl. ¶ 6.)  County

6   Defendants argue Moody cannot establish a claim of discrimination based on her non-

7   selection for these positions.[8]

8          To establish a prima facie discrimination claim based on a failure to promote, "a

9   plaintiff must show that (1) she belongs to a protected class; (2) she applied for and was

10  qualified for the position she was denied; (3) she was rejected despite her qualifications;

11  and (4) the employer filled the position with an employee not of plaintiff's class, or

12  continued to consider other applicants whose qualifications were comparable to plaintiff's

13  after rejecting plaintiff."  See Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027,

14  1037 (9th Cir. 2005).  If the plaintiff establishes a prima facie case, the employer must

15  proffer a legitimate reason for its decision, and if the employer does so, the plaintiff is then

16  required to establish that the employer's proffered reason is pretextual.  See id.

17         Here, as noted, Moody asserts she was not promoted because of her gender.

18  Because Moody, a female, applied for two openings in the NTF in October 2008, and each

19  position was filled by a male, and because County Defendants do not contend Moody lacks

20

21

22
   _____

23         [7]Moody's reliance on the "continuing violation" doctrine is misplaced.  Although that
    doctrine can apply to harassment claims, see Morgan, 536 U.S. at 118, it does not apply to
24  a "discrete" claim of discrimination, such as a failure to promote, see id. at 113 (holding
    "discrete discriminatory acts are not actionable if time barred, even when they are related
25  to acts alleged in timely filed charges"; rejecting argument that if "one act falls within the
    charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently
26  related to that act may also be considered for the purposes of liability").

27         [8]As with the above-discussed failure-to-promote claims, County Defendants do not
    directly raise the issue of whether Moody has exhausted this claim.  In light of the Court's
28  finding, discussed below, with respect to the merits, however, the Court does not consider
    the question of exhaustion.

                                            14

1    evidence to establish she was qualified for the position sought,[9] the Court finds County

2    Defendants have failed to show Moody cannot establish a prima facie case of

3    discrimination.

4         County Defendants have, however, offered evidence to establish that the County

5    selected Cang and Swinney for reasons other than because they are male.  Specifically,

6    Lieutenant Marc Alcantara ("Lt. Alcantara"), Commander of the NTF, attests that because

7    the NTF had "just lost a SWAT team member," he was looking for a candidate with SWAT

8    team experience, which Cang, as a former "SWAT team member" of the Palo Alto Police

9    Department, possessed.  (See Alcantara Decl., filed October 23, 2009, ¶¶ 2, 4.)  With

10   respect to Swinney, Lt. Alcantara attests that he had worked with Swinney in the past in

11   "the jail" and had found Swinney to have an "excellent work ethic," and, further, that

12   Swinney had "attended numerous narcotics related training seminars at his own expense,"

13   which, Lt. Alcantara states, demonstrated to him that Swinney would be "particularly suited

14   for work with the NTF."  (See id. ¶ 5.)

15        Moody does not contend the reasons given by Lt. Alcantara are insufficient to

16   constitute legitimate, non-discriminatory reasons for the selections of Cang and Swinney.

17   Rather, Moody argues, Lt. Alcantara's declaration is, for two reasons, inadmissible.

18        First, Moody points out that on May 11, 2009, she noticed the deposition of the

19   County's "person most knowledgeable" on the subject of, inter alia, "any promotions for

20   which [Moody] applied in the last three years."  (See McCoy Decl., filed November 16,

21   2009, Ex. A ¶ 32 (deposition notice served pursuant to Rule 30(b)(6) of Federal Rules of

22   Civil Procedure).)  Relying on the declaration of her counsel as to the testimony given at

23   the deposition conducted thereafter, Moody argues that Lieutenant Steven Shively ("Lt.

24   Shively"), the person so designated by the County, did not disclose therein the reasons

25   provided by Alcantara in his declaration.  (See id. ¶ 3.)  Moody does not assert, however,

26

27        [9]In April 2009, the County "transfer[red]" Moody to the NTF.  (See Shively Decl., filed
28   October 29, 2009, ¶ 4.)  Consequently, it is apparent the County found, at least in April
     2009, Moody was qualified for the position.

1   let alone offer evidence to demonstrate, that her counsel asked Lt. Shively any questions

2   about the reasons Cang and Swinney were selected for the NTF, or that Lt. Shively gave

3   any answer at variance with the information provided by Lt. Alcantara.  Consequently,

4   Moody has failed to demonstrate a violation of Rule 30(b)(6).

5         Second, Moody argues that the County failed to supplement its answers to Moody's

6   interrogatories, pursuant to Rule 26(e), with the information set forth in Lt. Alcantara's

7   declaration.  As County Defendants point out, however, none of the twenty-five

8   interrogatories propounded by Moody to the County requested that the County identify

9   information concerning the reason her October 2008 application for a position with the NTF

10  was unsuccessful.  (See id. Ex. C.)  Consequently, Moody has failed to demonstrate a

11  violation of Rule 26(e).[10]

12        Accordingly, because neither of the grounds asserted by Moody is sufficient to

13  warrant the striking of Lt. Alcantara's declaration, the Court turns to the issue of whether

14  Moody has offered sufficient evidence to establish the reasons provided by Lt. Alcantara

15  are pretextual.  In that respect, Moody relies on her declaration, in which she states:  "Joe

16  Cang and Christopher Swinney [ ] both were less qualified and [ ] had less seniority."  (See

17  Moody Decl. ¶ 6.)

18        Moody's conclusory assertion that she is more qualified than Cang and Swinney is

19  insufficient to create a triable issue of material fact.  See Schuler v. Chronicle Broadcasting

20  Co., 793 F.2d 1010, 1011 (9th Cir. 1986) (holding plaintiff's "subjective personal

21  judgments" as to qualifications insufficient to raise genuine issue of material fact as to

22  pretext); see also Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990)

23  (holding party opposing summary judgment cannot create triable issue of fact by offering

24  conclusory statements in declaration).  Further, setting aside Moody's failure to provide any

25  foundation for her assertion that she had more seniority than the persons selected, and

26  _____

27        [10]Moody's counsel also declares that Gaines's initial disclosures, served on Moody
      pursuant to Rule 26(a), did not disclose Lt. Alcantara as a witness.  (See id. ¶ 4 and Ex. B.)

28  Any lack of disclosure by Gaines, however, is irrelevant; the Third Cause of Action is not
      asserted against Gaines.

1    assuming Moody in fact had seniority over the selected persons, Moody fails to explain why

2    length of employment was relevant to the particular position.  Specifically, Moody fails to

3    show that the County's criteria included, let alone emphasized, seniority, nor does Moody's

4    personal belief that seniority would have been a more appropriate criterion suffice to create

5    a triable issue of material fact.  See Cotton v. City of Alameda, 812 F.2d 1245, 1249 (9th

6    Cir.1987) (holding plaintiff cannot demonstrate pretext by asserting employer should have

7    used different criteria; observing federal discrimination laws "do[ ] not make it unlawful for

8    an employer to do a poor job of selecting employees," but, rather, "make[ ] it unlawful to

9    discriminate on the basis of [a protected class]").

10                    **(3)  2008 Application for Vehicle Theft Task Force**

11         In her opposition to the instant motion, Moody states she is also bringing a claim for

12   discrimination based on the County's failure to select her for a position with the Vehicle

13   Theft Task Force ("VTTF").  Nowhere in Moody's declaration filed in support of her

14   opposition, however, does she address in any respect the basis for her assertion that she,

15   rather than the person actually selected, was entitled to this particular promotional

16   opportunity.  Moody's sole showing comprises documents she attaches thereto, which

17   documents indicate she applied for a position with the VTTF in January 2008, and that, in

18   March 2008, the County selected an individual named Shawn Parks for the position.  (See

19   Moody Decl. Ex. B, first through fifth unnumbered pages.)

20         County Defendants, observing that Moody failed to allege in her Complaint a claim

21   based on the County's not having selected Moody for a position with the VTTF, argue any

22   such claim is outside the scope of the instant action.  As set forth below, the Court agrees.

23         At the outset, the Court notes that Moody fails to address the question of how or

24   when such claim, i.e., that the County did not select her for a position with the VTTF on

25   account of gender discrimination, became part of the instant action, apparently suggesting

26   the Court examine the record to determine if there is some basis upon which the Court

27   could find such claim was properly and timely asserted herein.  The Court, however, is not

28   required to engage in a searching expedition.  See Keenan v. Allan, 91 F.3d 1275, 1279

1   (9th Cir. 1996) (holding district court has no obligation to "scour the record in search of a

2   genuine issue of triable fact").   Nonetheless, the Court has reviewed the record, and,

3   having done so, finds nothing to support a finding that Moody timely raised the instant

4   claim.

5           First, although Moody clearly based her discrimination claim on a failure to promote,

6   and although Moody's Complaint was filed after the County had selected someone other

7   than Moody for the VTTF position, the Complaint is explicit as to the one position to which

8   the County is alleged to have wrongfully failed to promote Moody, specifically, a position

9   with the NTF.  (See Compl. ¶ 37.)

10          Second, in the parties' Joint Case Management Statement, filed December 3, 2008,

11  in which Moody identified her claims and also set forth a number of factual and legal issues

12  in dispute, Moody, consistent with the allegations set forth in her Complaint, stated she was

13  alleging a failure to promote claim based on the County's not having selected her for a

14  position with the NTF (see Joint Case Management Statement, filed December 3, 2008, at

15  2:22-23, 3:10); Moody in no manner referred to the existence of any claim based on the

16  County's failure to select her for a position with the VTTF.

17          Third, after the close of fact discovery, Moody filed a motion to compel, seeking an

18  order directing the County to provide discovery on several subjects, including "[Moody's]

19  application for the position of Deputy Sheriff/Special Agent at San Mateo County Vehicle

20  Theft Task Force" and "the qualifications of Shawn Parks for the position of Deputy

21  Sheriff/Special Agent at San Mateo County Vehicle Theft Task Force."  (See Pl.'s Separate

22  Statement in Support of Mot. to Compel, filed July 10, 2009, at 3.)  County Defendants

23  opposed the motion to compel by arguing, inter alia, any evidence concerning such

24  subjects was "[i]rrelevant" and "not likely to lead to admissible evidence" for the reason that

25  "[Moody's] Complaint makes no allegations regarding such an 'application' or any wrongful

26  acts on the part of the [d]efendants in connection with such 'application.'"  (See County's

27  Opp. to Pl.'s Mot. to Compel, filed August 21, 2009, at 6:27 - 7:12).  In her reply in support

28  of her motion to compel, Moody failed to address, in any respect, why discovery

18

1    concerning Moody's application for the position with the VTTF was relevant to any claim

2    she was asserting, and, more significantly, at no time did Moody assert in support of her

3    motion that she was basing her discrimination claim, or any other claim, on her not having

4    been selected for a position with the VTTF.  Thereafter, on September 4, 2009, Magistrate

5    Judge Wayne D. Brazil denied Moody's motion to compel, finding Moody's request was

6    "transparently unreasonable . . . given that many of [the] topics called upon the County to

7    undertake burdensome efforts to produce information that would clearly exceed any

8    reasonable understanding of the appropriate scope of discovery in this case."  (See Order

9    Denying Pl.'s Mot. to Compel, filed September 4, 2009, at 2:6-11.)  Because Moody did not

10   file an objection to Magistrate Brazil's order, the order is now final.  See Fed. R. Civ. P.

11   72(a) (providing objection to nondispositive order issued by magistrate judge must be filed

12   within ten days after service of order); Simpson v. Lear Astronics Corp., 77 F.3d 1170,

13   1174 (9th Cir. 1995) (holding party who "fails to file timely objections to a magistrate judge's

14   nondispositive order with the district judge to whom the case is assigned forfeits [her] right

15   to appellate review of that order").

16        Finally, Moody has failed to seek leave, at any time, including in her opposition to

17   the instant motion for summary judgment, to amend her complaint to add a discrimination

18   claim, or any other claim, based on the County's not having selected her for a position with

19   the VTTF.

20        In sum, the Court finds that any claim of discrimination based on the County's not

21   having selected Moody her for a position with the VTTF in March 2008 is not within the

22   scope of the instant action.  See, e.g., Insurance Company of North America v. Moore, 783

23   F.2d 1326, 1327-28 (9th Cir. 1986) (holding, where plaintiff argued it was entitled to relief

24   on claim for breach of implied covenant of good faith and fair dealing, but had failed to

25   plead such claim, "district court did not err in refusing to award relief on [the] unpleaded

26   cause of action").[11]

27   ────────────────

28        [11]In light of this finding, the Court does not reach the issue of whether Moody
     exhausted her administrative remedies with respect to such a claim.

19

1

**(4)  Conclusion: Discrimination Claim**

2        Accordingly, County Defendants have shown the County is entitled to summary

3 judgment on the Third Cause of Action.

4                              **c.  Retaliation**

5        In her Complaint, Moody alleges, in the Sixth Cause of Action, that the County

6 "engaged in retaliatory conduct in violation of public policy against Moody for opposing

7 unlawful practices under Title VII, for complaining about the conduct alleged [in the

8 Complaint], and for participating in an investigation of the same."  (See Compl. ¶ 52.)  The

9 Complaint alleges the County made the following adverse employment decisions for

10 retaliatory purposes:  (1) "harassing her, creating unbearable working conditions, and

11 failing to respond to her concerns regarding the harassment"; (2) "placing her on

12 restrictions"; and (3) "making it impossible to work overtime."  (See Compl. ¶ 54.)

13        To establish a prima facie case of retaliation, a plaintiff "must demonstrate (1) that

14 she was engaged in protected activity/opposition, (2) that she suffered an adverse

15 employment decision, and (3) that there was a casual connection between her activity and

16 the employment decision."  See Folkerson v. Circus Circus Enterprises, Inc., 107 F.3d 754,

17 755 (9th Cir. 1997).  County Defendants argue Moody cannot establish she was subjected

18 to an adverse employment decision.  The Court considers the alleged adverse employment

19 decisions in turn.

20        To the extent the retaliation claim is based on the theory that Moody was subjected

21 to harassment, the Court finds, for the reasons stated above with respect to Moody's

22 harassment claim, Moody cannot establish her claim.[12]

23 _____

24        [12]In her opposition, Moody for the first time additionally contends she has "alleged"
that Lt. Rodriguez "allowed Gaines to assault [Moody] and did nothing to report the matter."
25 (See Pl.'s Opp. at 21:11-12.)  Setting aside the fact that Moody has not previously "alleged"
that her supervisor "allowed" Gaines to assault her, Moody offers no evidence to support
26 her assertion that Lt. Rodriguez "allowed" any assault, i.e., that he knew or should have
known that Gaines was going to assault Moody.  Further, Moody offers no evidence to
27 support a finding that Lt. Rodriguez did not report the matter, nor has she offered any
evidence to contradict County Defendants' evidence that Lt. O'Brien, who investigated the
28 matter, began to investigate Gaines's conduct the day after the incident occurred.  (See
Levy Decl. Ex. H at 19.)

20

1    To the extent the retaliation claim is based on the theory that the County placed

2    Moody on work restrictions, the Court finds Moody cannot establish her claim.  Specifically,

3    County Defendants have offered evidence that Moody's physician, Anthony Dubose, M.D.,

4    placed Moody on "modified duty" status following the July 2007 incident with Gaines.  (See

5    Levy Decl. Ex. Q.)  Moody fails to offer any evidence to the contrary, specifically, any

6    evidence that it was the County that decided to place her on work restrictions, nor does

7    Moody address this theory, in any manner, in her opposition.

8    To the extent the retaliation claim is based on the theory that Moody was prohibited

9    from working overtime, the Court finds Moody cannot establish her claim.  In particular,

10   County Defendants offer evidence that Moody was allowed to work overtime where, in light

11   of her physician's limitations, the work would not require "significant physical activity."  (See

12   id. Ex. A at 248.)  Moody fails to offer any evidence to the contrary, nor does Moody

13   address this theory, in any manner, in her opposition.

14   Finally, Moody, in her opposition, asserts that she did not receive the position with

15   the VTTF in March 2008 because of retaliation.  For the reasons discussed above with

16   respect to Moody's claim of discrimination, the Court finds any claim based on the County's

17   not having selected Moody for a position with the VTTF is not within the scope of the

18   instant action.

19   Accordingly, County Defendants have shown the County is entitled to summary

20   judgment on the Sixth Cause of Action.

21   **B.  State Law Claims**

22   The Court has jurisdiction over the above-titled action based on Moody's federal

23   claims.  See 28 U.S.C. § 1331 (providing district court has original jurisdiction over federal

24   claims).[13]  As discussed above, County Defendants are entitled to summary judgment on

25   each of those federal claims.  The remaining claims in the instant action, specifically,

26   Moody's First Cause of Action, by which Moody alleges a claim for battery against

27

28   [13]The parties are not of diverse citizenship.

21

1   Gaines,[14] Fifth Cause of Action, by which Moody alleges claims for intentional and

2   negligent infliction of emotional distress against each defendant, and Seventh Cause of

3   Action, by which Moody alleges a claim for negligence against the County, arise under

4   state law.  The Court's jurisdiction over Moody's state law claims is supplemental in nature.

5   See 28 U.S.C. § 1367(a).

6        A district court may decline to exercise supplemental jurisdiction where "the district

7   court has dismissed all claims over which it has original jurisdiction."  See 28 U.S.C.

8   § 1367(c)(3).  Where, for example, a district court has granted summary judgment on each

9   federal claim in the action, the district court, pursuant to § 1367(c)(3), may properly decline

10  to exercise supplemental jurisdiction over any remaining state law claims.  See Bryant v.

11  Adventist Health System/West, 289 F.3d 1162, 1169 (9th Cir. 2002).

12       Here, having considered the matter, the Court, in its discretion, will decline to

13  exercise supplemental jurisdiction over the remaining claims.

14                               **CONCLUSION**

15       For the reasons stated above:

16       1.  To the extent County Defendants' motion seeks judgment on Moody's federal

17  claims, the motion is hereby GRANTED.

18       2.  To the extent County Defendants' motion seeks judgment on Moody's state law

19  claims, the motion is hereby DENIED without prejudice and Moody's state law claims are

20  hereby DISMISSED without prejudice to Moody's refiling them in state court.

21       3. The Clerk shall close the file.

22       **IT IS SO ORDERED.**

23

24  Dated:  December 22, 2009

25                                              MAXINE M. CHESNEY
                                                United States District Judge

26

27  _____

28       [14]By the instant motion, County Defendants argue that the County is entitled to
    summary judgment on the First Cause of Action.  The First Cause of Action, however, is
    only alleged against Gaines.

                                        22